UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>DERRICK GRIFFIN<br><br>         Defendant. | Case No. 16-CR-26-JPS<br><br>ORDER |

    On February 17, 2016, a grand jury in this district returned a single count indictment charging Derrick Griffin with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Docket #8). The indictment is based on a search and seizure conducted by law enforcement on February 10, 2016, during which time a loaded Astra 9 millimeter pistol was recovered from Griffin's vehicle. (Docket #8).

    In anticipation of the jury trial for this matter, Mr. Griffin filed a motion to suppress the gun seized during the February investigative stop. (Docket #16). On April 19, 2016, Magistrate Judge David E. Jones held an evidentiary hearing to address various issues of fact underlying that motion. (Docket #23). Based on the facts developed therein, Magistrate Jones issued a report and recommendation in which he concludes that this Court should grant Mr. Griffin's motion to suppress because the stop was not supported by reasonable suspicion of criminal activity. (Docket #30).

    Pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and Federal Rule of Criminal Procedure 59(b)(2), both Mr. Griffin and the government filed objections to Magistrate Jones's report and recommendation. (Docket #33, #34). Those objections have now been fully briefed by the parties. (Docket

#33, #34, #37, #38, #39).[1] For the reasons stated herein, the Court will adopt Magistrate Jones's recommendation that Mr. Griffin's motion to suppress be granted (Docket #30) and will, accordingly, grant the motion. (Docket #16).

1. BACKGROUND

On February 8, 2016, a confidential informant (or "informant") gave information to ATF Officer Anthony Randazzo ("Officer Randazzo") that Mr. Griffin was a felon who regularly carried a gun. (Docket #23 at 7). The informant told Officer Randazzo that Mr. Griffin works at a salon called Hair Fantasies located on Martin Luther King Drive, and that Mr. Griffin takes breaks in front of the barbershop to smoke marijuana. (Docket #23 at 7, 13-19). The informant indicated that Mr. Griffin kept a firearm with him in his vehicle and that he drove a black Nissan Altima with no tint. (Docket #23 at 7-9).

Prior to the stop, Officer Randazzo ran Mr. Griffin's record and determined that he was a felon and that he had been previously convicted on firearm violations. (Docket #23 at 10). The informant also confirmed Mr. Griffin's identity in a photograph. (Docket #23 at 10). Officer Randazzo relayed this information to his partner, ATF Special Agent Loren Common ("Agent Common"), who had previously arrested Mr. Griffin in connection with a federal firearms offense. (Docket #23 at 23-24).

Later that day, Officer Randazzo and Agent Common, drove past Hair Fantasies, but they did not observe Mr. Griffin because the salon was closed. (Docket #23 at 12). Two days later, on February 10, 2016, Officer Randazzo and Agent Common drove past the salon again and saw Mr. Griffin sitting

---

[1]The government has not filed a reply in support of its objections.

in the driver's seat of an Altima, with no tint, parked in an off-street lot located in front of the salon. (Docket #23 at 13). The vehicle's Wisconsin license plate, 385-THY, matched the license plate number provided to the ATF by the informant. (Docket #23 at 10-14). When observing the Nissan, the officers saw the occupant bend over the center console. (Docket #23 at 18-19). They did not see him smoking. (Docket #23 at 19, 43, 70).

After spotting Mr. Griffin in the parking lot, the officers called for back-up and began surveillance of the vehicle. (Docket #23 at 20). During this time, law enforcement observed no suspicious behavior. (Docket #23 at 70). When the back-up arrived, approximately fifteen to twenty minutes later, the four officers flashed their lights (Docket #23 at 21), drew their weapons (Docket #23 at 29), and approached Mr. Griffin on foot with the intent to remove him from the vehicle (Docket #23 at 20-21; 28). From their vantage point, the officers could see into the front of the vehicle, including the dashboard and the driver's seat where Mr. Griffin was sitting. (Docket #23 at 21). The officers removed Mr. Griffin from the vehicle and subsequently frisked him and handcuffed him. (Docket #23 at 30-31; 77-78). Mr. Griffin put his hands up, exited the car, exhibited no aggressive behavior, and did not attempt to flee. (Docket #23 at 30-33; 67).

According to the magistrate's report, as Mr. Griffin was exiting his car, and before he was placed in handcuffs,[2] Agent Common performed a safety search of the "lunge area" that Mr. Griffin could have accessed within the car. (Docket #23 at 22; 56; 73). During this search, Agent Common found a

---

[2] Mr. Griffin objects to this finding of fact. (Docket #30 at 1). However, as it is ultimately irrelevant to the Court's conclusion that the motion to suppress should be granted, the Court need not address the dispute.

loaded pistol in the center console (Docket #23 at 22; 56) and Mr. Griffin was then formally arrested.

2. LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate judge may consider potentially dispositive motions, such as a motion to suppress evidence, and issue proposed recommendations to the district judge regarding the motion. When reviewing a magistrate's recommendation, the Court is obliged to analyze the portions of the report to which the parties have lodged objections *de novo.* 28 U.S.C. § 636(b)(1)(C). Thus, the Court can "accept, reject, or modify, in whole or in part, the report or recommendations made by the magistrate." *Id.* In other words, the Court's *de novo* review of Magistrate Jones's findings and recommendation is not limited to his legal analysis alone; rather, the Court may also review his factual findings and accept, reject, or modify those findings as it sees fit based upon the evidence. *Id.*

3. ANALYSIS

3.1 Overview

In his motion to suppress, Mr. Griffin argues that the gun that law enforcement recovered during the February 2016 traffic stop should be suppressed because both the search and the seizure of Mr. Griffin violated the Fourth Amendment. (Docket #15 at 5-8). Specifically, he argues that Mr. Griffin's warrantless seizure was not supported by probable cause or reasonable suspicion and that the subsequent search of Mr. Griffin's car exceeded the scope of a proper investigative stop. (Docket #16 at 5-8). The government responds that: (1) at the least, the investigative stop was proper under the reasonable suspicion standard articulated in *Terry v. Ohio*, 392 U.S.

Page 4 of 16

Case 2:16-cr-00026-JPS    Filed 07/22/16    Page 4 of 16    Document 40

1, 21-22 (1968); and (2) that the search was a lawful protective sweep under *Michigan v. Long*, 463 U.S. 1032 (1983). (Docket #28, #34).³

In his report, Magistrate Jones agreed with Mr. Griffin that the traffic stop was neither supported by reasonable suspicion, nor, by extension, probable cause. (Docket #30). Based on the facts developed at the evidentiary hearing, the magistrate concluded that: (1) "the informant provided scant information, most of it publicly knowable"; (2) "there was nothing corroborated by law enforcement indicating that the informant had inside information about Mr. Griffin"; (3) "the informant's basis for knowledge of the illegal activity [wa]s unknown"; and (4) "there was a low level of independent police corroboration." (Docket #30 at 9). Finally, though it was not necessary to his decision, Magistrate Jones also concluded that law enforcement's subsequent "lunge-area" search of Mr. Griffin was a lawful protective sweep. (Docket #30 at 10).

Both parties lodged objections with respect to the report. (Docket #33, #34). On the one hand, Mr. Griffin does not object to the magistrate's conclusion that his seizure was unlawful; instead, he attacks Magistrate Jones's conclusion with respect to the subsequent search. (Docket #34). Specifically, he challenges : (1) the factual finding that law enforcement did not handcuff him immediately upon removing him from the vehicle; and (2)

---

³The government also argued, in its original reply brief in opposition to the motion to suppress, that the stop was justified by the automobile exception to the warrant requirement. (Docket #28). However, Magistrate Jones deemed the exception inapplicable. (Docket #30 at 9-10). The government has not challenged the magistrate's ruling with respect to this issue and the Court has no independent basis from which to depart from Magistrate Jones's conclusion. Thus, the Court will not disturb the magistrate's ruling with respect to this issue.

Page 5 of 16

the conclusion that the search of Mr. Griffin's vehicle was authorized under *Long.* (Docket #34). Mr. Griffin also renews an argument that he made in his original motion, namely, that the seizure exceeded the scope of a proper *Terry* stop. (Docket #34). On the other hand, the government's objections are geared toward the magistrate's ruling with respect to Mr. Griffin's search. (Docket #34). It argues that: (1) the magistrate relied on incomplete information in recommending that the confidential informant upon which law enforcement relied was unreliable; (2) the report did not account for material facts when applying the totality of the circumstances test to determine reasonable suspicion; and (3) the report reaches a conclusion that is inconsistent with precedent in the Seventh Circuit. (Docket #34).

The objections are now fully briefed and ripe for adjudication. For the reasons stated herein, the Court agrees with Magistrate Jones' determination with respect to Mr. Griffin's motion to suppress, and will, accordingly, grant the motion.

3.2    The Seizure

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. CONST. amend IV. The parties agree that Mr. Griffin's compliance with law enforcement's order to exit his vehicle amounted to a "seizure," thereby implicating the Fourth Amendment. *See California v. Hodari D.*, 499 U.S. 621, 626-27 (1992); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1178 n.4 (7th Cir. 1994).

Generally, the Fourth Amendment demands that seizures be supported by probable cause. *Terry*, 392 U.S. at 20. An exception to this rule, however, lies for what is known as an "investigatory stop." *United States v. Booker*, 579 F.3d 835, 838 (7th Cir. 2009) ("However, police may initiate an

Page 6 of 16

Case 2:16-cr-00026-JPS    Filed 07/22/16    Page 6 of 16    Document 40

investigatory stop—a *Terry* stop—when the officer has reasonable suspicion that a crime occurred."). An investigatory stop "must be valid at its inception," *United States v. LePage*, 477 F.3d 485, 488 (7th Cir. 2007), and is only proper "if the officer making the stop is 'able to point to specific and articulable facts' that give rise to a reasonable suspicion of criminal activity." *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011) (internal citations omitted); *see also United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015) ("An investigatory stop complies with the Fourth Amendment if the brief detention is based on reasonable suspicion that the detained individual has committed or is about to commit a crime.") (emphasis added).

"Reasonable suspicion is a lower threshold than probable cause and does not deal with hard certainties, but with probabilities." *Bullock*, 632 F.3d at 1012. In other words, it "requires more than a hunch[,] but less than probable cause[,] and considerably less than preponderance of the evidence." *Gentry v. Sevier*, 597 F.3d 838, 845 (7th Cir. 2010) (internal citations omitted). "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show

probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990).[4] "Ultimately, determining whether reasonable suspicion exists is not an exact science, and 'must be based on commonsense judgments and inferences about human behavior.'" *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1901 (2015) (internal citation omitted).

"[I]n determining whether officers ha[ve] the requisite particularized suspicion for a *Terry* stop, [courts] do not consider in isolation each variable of the equation that may add up to reasonable suspicion. Instead, [the Court must] consider the sum of all of the information known to officers at the time of the stop." *Ruiz*, 785 F.3d at 1141 (citing *Matz*, 769 F.3d at 523). "The reasonableness of the stop is based on an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was

---

[4]The government argues that the magistrate incorrectly relied on *White*, 496 U.S. 325, and *Florida v. J.L.*, 529 U.S. 266 (2000), in the report and recommendation. (Docket #34 at 5-9). While it is true that the reliability calculus is distinguishable in those cases because the informants in *White* and *J.L.* were anonymous, it would misunderstand those opinions conclude the guidance provided by the Court in *White* and *J.L.* must be ignored when a confidential informant is involved. The Seventh Circuit has explicitly cited and/or relied on the teachings of *White* and *J.L.* in the context of confidential and identified informant cases. *See, e.g.*, *United States v. Booker*, 579 F.3d 835, 839 (7th Cir. 2009); *United States v. Green*, 124 F.3d 205 (7th Cir. 1997); *United States v. Lechuga*, 925 F.2d 1035, 1038 (7th Cir. 1991). Indeed, it is telling that the government cites to both *White* and J.L. in its own brief in support of its objections. (Docket #34 at 9). At bottom, Supreme Court and Seventh Circuit cases make clear that—whether in the probable cause or the reasonable suspicion context—when relying on tips from informants, various data points are relevant. The relative weight of these pieces of information are highly context dependent and must "add" to different results depending on the nature of the case. In this sense, the Court finds the Supreme Court's guidance in both *White* and *J.L.* instructive.

appropriate?" *Booker*, 632 F.3d at 1011 (internal citations omitted). "In other words, 'courts examine the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect.'" *Ruiz*, 785 F.3d at 1141 (citing *Bullock*, 632 F.3d at 1012).

A tip from an informant can provide a basis for reasonable suspicion. *See Adams v. Williams* 407 U.S. 143, 147 (1972). In this context, "the informant's veracity, reliability, and basis of knowledge are highly relevant…. although allowance must be made in applying them for the lesser showing required to meet [the reasonable suspicion] standard." *White*, 496 U.S. at 325. "[W]hen a single informant provides the tip that brought police to a *Terry* stop, th[e] court looks to the amount of information given, the degree of reliability, and the extent that the officers can corroborate some of the informant's information." *Booker*, 579 F.3d at 838-39.

In assessing the reliability of a tip, the Supreme Court has recognized "[i]nformants' tips, like all other clues and evidence coming to [law enforcement] on the scene may vary greatly in their value and reliability." *Adams*, 407 U.S. at 147. While "[r]igid legal rules are ill-suited to an area of such diversity," *White*, 496 U.S. 232, it is particularly "significant" when the informant can predict "future action," or "details that only someone personally acquainted with the suspect would know," *Price*, 184 F.3d at 641 (citing *United States v. DeBerry*, 76 F.3d 884, 886 (7th Cir. 1996)). *See also United States v. Wooden*, 551 F.3d 647, 649 (7th Cir. 2008) ("Articulable suspicion can be established by an anonymous tip if the police corroborate enough of the tipster's information to imply that the tipster must possess inside knowledge

about the details that the police could not otherwise observe."). Thus, the Supreme Court has cautioned that:

> [a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be *reliable in its assertion of illegality, not just in its tendency to identify a determinate person.*

*United States v. Groves*, 559 F.3d 637, 639 (7th Cir. 2009) (citing *J.L.*, 529 U.S. 266) (emphasis added).

However, "[a]n informant does not have to be one hundred percent correct to provide the police with reasonable suspicion." *Id.* at 641. Likewise, courts have given more weight to tips given by known, or confidential, tipsters than from those who are given by anonymous persons. *Wooden*, 551 F.3d at 649 ("Knowing a tipster's name increases the chance that he can be held accountable (both state and federal governments make it a crime to tell material lies to law-enforcement officials), and knowledge that a tipster has inside information likewise increases the chance that the report of crime is accurate.").

Here, the Court agrees with Magistrate Jones that Mr. Griffin's investigative stop was not supported by reasonable suspicion. Having surveilled Mr. Griffin in his car for approximately fifteen to twenty minutes without any sign of overt criminal—or even suspicious—conduct, law enforcement proceeded to seize him in sole reliance on: (1) a confidential informant's tip; and (2) their knowledge that Mr. Griffin had been previously convicted of being a felon in possession of a firearm. Despite the informant's

Page 10 of 16

Case 2:16-cr-00026-JPS   Filed 07/22/16   Page 10 of 16   Document 40

alleged first-hand knowledge of the facts that he reported and his/her role in past criminal investigations, the tip in this case consisted of information that was public in nature—none of which the police corroborated as predictive of future behavior. In this sense, the information provided by the tipster tended merely to identify Mr. Griffin, rather suggest that he had some "insider" access to Mr. Griffin's affairs. Having had no other basis from which to proceed with the *Terry* stop, the Court finds that Mr. Griffin's seizure was unlawful because it was not supported by reasonable suspicion.

As instructed by the Seventh Circuit, the Court must evaluate a confidential informant's tip by evaluating: (1) the amount of information the informant gave; (2) the reliability of the informant; (3) and the extent to which law enforcement corroborated the information provided. *Booker*, 579 F.3d at 838-39. The government argues that the informant in this case was reliable because he allegedly: (1) had first hand knowledge of the information comprising the tip; and (2) had previously provided accurate information with respect to other criminal investigations.

Even assuming that the government's allegations regarding the informant are true, the Court is not satisfied that the government has met its burden to establish the constitutionality of Mr. Griffin's seizure. While it is certainly true that courts place more value on informants who have proven themselves reliable in the past, this fact—standing alone—has never been found sufficient to support a *Terry* stop. *See, e.g., United States v. Bohman*, 683 F.3d 861, 862 (7th Cir. 2012) (finding that a tip did not support reasonable suspicion to stop because it was not particularized as to the car in question); *United States v. Green*, 124 F.3d 205, 1997 WL 413520, *4 (7th Cir. 1997) ("[T]he

information received from the trusted confidential informants was just one factor supporting Detective Weston's reasonable and articulable suspicion that Green was engaged in drug trafficking.").

For example, in *Adams*—the first case in which the Supreme Court addressed law enforcement's reliance on a confidential informant's tip in the context of a *Terry* stop—the Court found numerous facts relevant to the reasonable suspicion calculus. 407 U.S. at 147-48. In that case, an officer had received a tip from an "informant [who] was known to him personally and had provided him with information in the past." *Id.* The informant stated that a man with a gun and drugs on his person was sitting alone in a parked car located in a high crime area at 2:15 in the morning. *Id.* When the officer approached the vehicle, the defendant failed to comply with an order to open his car door. *Id.* In light of law enforcement's history with the tipster, the circumstances surrounding the stop, and the defendant's behavior, the Court concluded that the officer had reasonable suspicion to conduct a *Terry* stop and frisk the defendant. *Id.*

Likewise, in *United States v. Smith*, 697 F.3d 625, 632-33 (7th Cir. 2012), the Seventh Circuit concluded that reasonable suspicion to conduct a *Terry* stop existed when suspicious behaviors, corroborated by a reliable, confidential informant's tip, indicated a reasonable likelihood of criminal conduct. In that case, a known informant predicted that a bank robbery would occur in a near a specific area of Chicago, on a certain afternoon, and that the robbers would be leaving the crime scene in a green Cadillac. *Id.* at 628. Prior to the robbery, the police saw three males driving a vehicle that matched the informant's description. *Id.* at 629. About two hours later, a bank

robbery occurred within the Chicago-land area, in a location about ninety minutes away from the last known location of the green Cadillac. *Id.* The police then observed: (1) the defendant exit the green Cadillac wearing clothing that matched a description of the robbery suspect; and (2) the green Cadillac speed away when cries of "police" were made. *Id.* Given the "totality" of these facts, the court concluded that law enforcement had reasonable suspicion that the defendant was involved in the bank robbery. *Id.* at 633.

Mr. Griffin's case is a far cry from facts supporting the finding of reasonable suspicion in *Adams* or *Smith*. Unlike the defendant in *Adams*, there have been no allegations that Mr. Griffin was sitting in a parked car located in a high crime neighborhood; nor was he being surveilled at a time of day that might be perceived to be dangerous. In addition, law enforcement's testimony at the evidentiary hearing did not reveal their observation of any overtly suspicious behaviors that would have led them to believe that criminal activity may be afoot. Mr. Griffin was merely sitting in his car, apparently doing nothing, in broad daylight, outside of his workplace.

Likewise, unlike the informant in *Smith*, the informant in this case did not predict any information that either: (1) demonstrated his/her intimate knowledge of Mr. Griffin's affairs; or (2) predicted Mr. Griffin's future conduct. More specifically, Mr. Griffin's identity, place of employment, and prior criminal record are pieces of information that any person could have gleaned from observing Mr. Griffin at work, talking with those who associated with him, and/or performing a publicly accessible records search.

So too with the make, model, license plate number, and tint of his car.[5] The fact that Mr. Griffin might take breaks outside of his workplace—and in his car—is a similarly an innocuous detail that could have been easily gathered by any bystander within public view. Had Mr. Griffin been smoking in his car—the only "detail" suggesting some genuine familiarity with Mr. Griffin's affairs—the Court's conclusion may be different. But, contrary to the informant's "prediction," Mr. Griffin was simply sitting in his car on the day in question. *Cf. United States v. Ganser*, 315 F.3d 839, 843 (7th Cir. 2003) ("[T]he CI correctly predicted that Simmons would receive a letter from a 'Cheryl' in California in a greeting card-type envelope. These details accurately predicted future behavior, demonstrating inside information and a special familiarity with Simmons' affairs."); *United States v. Price*, 184 F.3d 637, 641 (7th Cir. 1999) ("It is significant that many of the details corroborated by the police before they stopped the defendant—such as the exact destination of the car, the time of arrival, the existence of drugs—related to 'future actions,' and were 'details that only someone personally acquainted with the suspect would know.'") (internal citations omitted).

Moreover, the fact that the informant in this case told law enforcement that Mr. Griffin carried a weapon—a fact which turned out to be true—does not advance the government's position. (Docket #34 at 9). Not only was this

---

[5]The government argues that the informant's reliability was strengthened because he/she knew that Mr. Griffin drove a Nissan Altima, even though that car was not registered in his name. (Docket #34 at 9). The Court does not place as much value on this "detail" as the government suggests. Contrary to the government's position, it would be plain to any casual observer the make and model of the vehicle that Mr. Griffin drove. While it might indicate an enhanced familiarity to actually know that Mr. Griffin was not registered to drive the Nissan Altima, there was no suggestion that the informant provided this fact.

fact not corroborated prior to the investigative stop, but also such an argument is necessarily backward looking. Instead, the Court must evaluate the facts as they existed at the time the stop occurred. *Ruiz*, 785 F.3d at 1141.

At bottom, what the Supreme Court and Seventh Circuit case law highlight is the necessity to consider the totality of the circumstances when evaluating a *Terry* stop. As outlined above, the amount of information provided by the informant was not only minimal, but also limited to information that: (1) tended to identify Mr. Griffin; and (2) could have been gathered from any casual public observer. The fact that the government confirmed the tipster's prediction that Mr. Griffin would be in a certain car outside of his workplace did not rise to the level of corroborated, predictive information that the Seventh Circuit has found sufficient to support a *Terry* stop. *See Smith*, 697 F.3d at 632; *Ganser*, 315 F.3d at 843; *Price*, 184 F.3d at 641; *Green*, 1997 WL 413520, *4; *United States v. Ocampo*, 890 F.2d 1363, 1368 (7th Cir. 1989). Nor was there any suspicious behavior to support the reasonable inference that Mr. Griffin may be engaged in criminal conduct.[6] *See Adams*, 407 U.S. at 147-48; *Smith*, 697 F.3d at 632; *United States v. $32,400.00, in U.S. Currency*, 82 F.3d 135, 140 (7th Cir. 1996); *United States v. Lechuga*, 925 F.2d 1035, 1038 (7th Cir. 1991); *Ocampo*, 890 F.2d at 1368; *United States v. Teslim*, 869 F.2d 316, 322 (7th Cir. 1989). Thus, despite the fact that law enforcement

---

[6]To be sure, the government puts much weight on the fact that, at some point during the surveillance, law enforcement observed Mr. Griffin leaning over the console of his car. However, the Court cannot, in light of all of the facts in this case, satisfy itself that such innocent behavior was suggestive of criminal activity. *See United States v. Foster*, 634 F.3d 243, 248 (4th Cir. 2011) ("We also note our concern about the inclination of the Government toward using whatever facts are present, no matter how innocent, as indicia of suspicious activity").

was aware of Mr. Griffin's prior conviction, the totality of the circumstances in this case lead the Court to conclude that law enforcement proceeded to seize Mr. Griffin on a "hunch" rather than reasonable suspicion. The evidence seized as a result of that stop shall, therefore, be suppressed.[7]

4. CONCLUSION

In sum, the Court concludes that the totality of the circumstances indicate that law enforcement lacked reasonable suspicion to seize Mr. Griffin on February 10, 2016. Because the *Terry* stop was unlawful from the outset, the Court need not address the parties' arguments with respect to the propriety of the subsequent search. The Court will thus adopt Magistrate Jones's recommendation and grant Mr. Griffin's motion to suppress.

Accordingly,

IT IS ORDERED that Magistrate Jones' report and recommendation (Docket #30) be and the same is hereby ADOPTED; and

IT IS FURTHER ORDERED that, consistent with the Court's adoption of the magistrate's report and recommendation, Mr. Griffin's motion to suppress (Docket #16) be and the same is hereby GRANTED.

Dated at Milwaukee, Wisconsin, this 22nd day of July, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

---

[7] The government's final argument relates to the applicability of certain Seventh Circuit case law. However, as highlighted by the defendant, all of the cases cited by the government relate to the magistrate's analysis of the *search* of Mr. Griffin's vehicle, rather than his initial *seizure*. Because the Court agrees with the magistrate that Mr. Griffin's seizure was unlawful from the outset, the Court need not address this argument.